# EXHIBIT A

3/17/2020 3:49 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 41736190
By: Alize Herrera
Filed: 3/17/2020 3:49 PM

2020-17850 / Court: 334

CAUSE NO. _____

| | | |
|---|---|---|
| **D&S MARINE SERVICE, L.L.C.** § | | **IN THE DISTRICT COURT OF** |
| Plaintiff, § | | |
| § | | |
| v. § | | **HARRIS COUNTY, TEXAS** |
| § | | |
| **INTERCONTINENTAL** § | | |
| **TERMINALS COMPANY, L.L.C.** § | | |
| Defendant. § | | **_____ JUDICIAL DISTRICT** |

### D & S MARINE SERVICE, L.L.C.'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, D & S Marine Service, L.L.C, complaining of and about Defendant, Intercontinental Terminals Company, LLC, and for its causes of action shows unto the Court the following:

### PARTIES AND SERVICE

1. D & S Marine Service, L.L.C ("D&S Marine"), is a Louisiana limited liability company, owning and operating pushboats, including but not limited to, in the Houston Ship Channel. D&S Marine maintains a corporate office at 222 Trinity Ln, Gray, LA 70359.

2. Defendant, Intercontinental Terminals Company, LLC ("ITC"), is a Delaware limited liability company with its principle place of business in Harris County, Texas. ITC may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136. Based upon information and belief, ITC is the owner and/or operator of a large petrochemical facility located along the Houston Ship Channel in the city of Deer Park in Harris County, Texas (hereinafter the "ITC Facility"). As detailed in the Texas Secretary of State records, ITC maintains a corporate office in Texas, located at 1021 Main St. #1150, Houston, Texas 77002-6508. Further, ITC has availed itself of the jurisdiction and laws of

the State of Texas by virtue of the ITC Facility. D&S Marine specifically invokes the right to institute this suit against whatever entity was conducting business using the assumed or common name of "Intercontinental Terminals Company" with regard to the events described in this Petition. D&S Marine expressly invokes its rights under Rule 28 of the Texas Rules of Civil Procedure to have the true name of this party substituted at a later time upon the motion of any party or of the Court.

**JURISDICTION AND VENUE**

3. The subject matter in controversy is within the jurisdictional limits of this Court. Venue is proper in Harris County, Texas, pursuant to Texas Civil Practice and Remedies Code §15.002(a)(1) because it is the county where all or a substantial part of the events or omissions giving rise to the claim occurred. Venue is proper as to D&S Marine and ITC under Texas Civil Practice & Remedies Code§ 15.005.

4. This Court has specific and general personal jurisdiction over ITC because ITC owns property located in Texas, and ITC has purposefully availed itself of the privilege of conducting business and activities within Texas for monetary profit; it has substantial and continuous contacts with the State of Texas, generally and with respect to this action, which contacts are sufficient to satisfy both general and specific minimum contacts; and exercising jurisdiction over it does not offend the traditional notions of fair play and substantial justice. Further, ITC has corporate headquarters in Houston, Texas according to the Texas Secretary of State's records.

5. D&S Marine is not seeking damages in an amount exceeding $75,000, and therefore federal courts lack diversity jurisdiction over this suit. Additionally, D&S Marine's claims raise no federal question. Thus, any attempt to remove this case to federal court is improper.

## FACTS

6. On the morning of March 17, 2019, an 80,000 barrel tank containing naphtha caught fire at the ITC Facility. Later that day, the fire spread to a second ITC tank containing xylene. Overnight, the fire spread to six additional ITC tanks. The next day, on March 18, two additional ITC tanks caught fire, bringing the total number of burning ITC tanks to ten. The ten tanks that caught fire contained petrochemical products including but not limited to gasoline blends, toluene, naphtha, xylenes and blended oils, among others currently unknown to D&S Marine.

7. On March 20, 2019, *The Houston Chronicle* quoted an unidentified ITC worker as saying the fire may have been started when a tank overheated and a safety valve did not shut that tank down. Apparently, this individual reported that it was common for the tanks to overheat, but this time the safety mechanism did not work properly. Regardless of why the tanks caught fire, D&S Marine affirmatively pleads that tanks should not spontaneously combust in their normal operation, so the doctrine of *res ipsa loquitur* applies.

8. The ten-tank fire caused oil and hazardous materials, including toxic benzene, to travel into the environment during and after the fire. The fire and resulting release of toxic materials forced evacuations, shelter-in-place orders, and the closure of surrounding businesses, waterways, ferries and roads.

9. On March 20, ITC publicly reported that the fire was extinguished.

10. On March 21, air monitoring systems reported elevated levels of benzene, and additional shelter-in-place orders were issued.

11. On March 22, a containment wall at ITC failed, releasing a mixture of firefighting water, foam, and petrochemicals into a drainage ditch that discharged into the Houston Ship

Channel via Tucker Bayou. Three ITC tanks also reignited, and the new fire spread to the contaminated drainage ditch.

12. As a result of these discharges, The United States Coast Guard closed the Houston Ship Channel on March 22 from Tucker's Bayou adjacent to the ITC Facility to Light 116.

13. D&S Marine owns and operates towboats that make use of the Intracoastal Waterway, including the Houston Ship Channel and surrounding waterways, to move product and other cargo in commercial trade. Due to the omissions and commissions of ITC, D&S Marine was unable to operate its usual and customary business. Specifically, D&S Marine's vessels were contaminated by toxic gases emitted from the ITC Facility; the crew members aboard its vessels were placed in the "zone of danger" of toxic gases and hazardous substances emitted from the ITC Facility, and D&S Marine suffered loss of contaminated property.

14. Three of D&S Marine's vessels were impacted by the ITC fire: the M/V MARY JEAN, M/V LUCY HANNAH, and M/V HOUSTON FORET (the "Vessels").

15. As a proximate result of ITC's acts and/or omissions, the Houston Ship Channel was closed and D&S Marine's Vessels were contaminated by toxic gases, including but not limited to Benzene. The contamination of D&S Marine's Vessels exposed the Vessels and placed their crews in the zone of danger for bodily injury and/or death, forcing D&S Marine to evacuate its crews from the Vessels.

16. Because ITC's negligence and other fault rendered the D&S Marine Vessels uninhabitable, and because it was reportedly unsafe for the crew to remain in the vicinity of the toxic gases emitted from the ITC Facility, D&S Marine incurred expenses for maintenance, cure and unearned wages for the crew members through the end of their hitches. D&S Marine complied with its maintenance and cure obligation by providing food and lodging, and medical treatment

and/or testing to its crews, and further responded to its obligation to provide its crews with unearned wages through the end of their hitches.

17. As a result of the foregoing, D&S Marine incurred expenses including but not limited to: costs for medical treatment and/or testing of the crews of the Vessels; repairs to two of the Vessels; groceries, food, and other provisions; transportation; lodging; and miscellaneous expenses, all resulting from the fire and chemical releases and the contamination and other unsafe environmental conditions associated with same.

18. Moreover, D&S Marine's Vessels were contaminated with toxic particulate pollution, including Benzene, forcing D&S Marine to incur expenses associated with environmental containment and safety issues as a result of the fire and chemical releases. Specifically, toxic gases contaminated clothing, food, equipment, stores, and other necessaries aboard the vessel, requiring cleaning, containment, and/or replacement.

19. As a result of ITC's acts and/or omissions, D&S Marine has suffered property damages, including injury to its business and injury to personal property that resulted in damages including repairs, cost of replacements, loss of use, and/or any combination thereof.

20. ITC has caused D&S Marine to suffer approximately $32,389.96 in damages, including but not limited to:

    i. Medical treatment and/or testing of crew members;
    ii. Property damages to its Vessels;
    iii. Attorney's fees in defense of claims by crew members;
    iv. Food and Lodging for its crew members; and
    v. Replacement of contaminated items.

21. Through this lawsuit, D&S Marine seeks recovery of all of its harms, losses and damages from ITC.

**NEGLIGENCE**

22. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

23. ITC committed acts and/or omissions resulting in the fire at the ITC Facility that collectively and separately constitute negligence.

24. ITC had a duty to exercise ordinary care, meaning that degree of care that would be used by any chemical company of ordinary prudence under the same or similar circumstances, and ITC breached that duty in the following non-exclusive ways:

   vi. In failing to properly store chemicals at the ITC Facility;
   vii. In failing to develop, implement, and maintain proper procedures for the backup refrigeration of chemicals stored at the ITC Facility;
   viii. In failing to develop, implement, and maintain proper safety procedures and protocols concerning the safe maintenance of the highly toxic and inherently dangerous chemicals maintained at the ITC Facility;
   ix. In failing to have adequate procedures in place to protect the safety and welfare of the community in the event of a catastrophe;
   x. In failing to provide the public accurate information on the chemicals being released;
   xi. In failing to properly warn the public concerning the risks and dangers associated with the highly toxic and inherently dangerous chemicals maintained at the ITC Facility;
   xii. In failing to implement and maintain proper procedures, as established by ITC and governmental agencies, regarding the safe and proper handling of chemicals at the ITC Facility; and
   xiii. In failing to adequately prepare for a major fire event, having had the knowledge that such an event was foreseeable.

25. ITC's breaches were a proximate cause of the occurrence in question and the injuries and damages sustained by D&S Marine alleged herein.

**GROSS NEGLIGENCE**

26. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

27. ITC's acts and omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. ITC consciously and wantonly neglected to take actions reasonably required to correct its past mistakes and omissions. ITC acted with a conscious indifference to the rights, safety or welfare of others, including D&S Marine and its employees. As a direct and proximate cause of ITC's gross negligence, D&S Marine suffered damages, and D&S Marine seeks recovery from ITC of all of its actual, special, consequential, incidental, and other damages, harms and losses.

28. Moreover, ITC's acts or omissions involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and ITC had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. D&S Marine therefore seeks the recovery of punitive damages from ITC based on its grossly negligent conduct.

## NEGLIGENCE PER SE

29. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

30. ITC's actions leading up to, during, and after the ITC fire violate Texas law (including without limitation the Texas Clean Air Act, Chapter 382 of the Texas Health and Safety Code, Chapter 7 of the Texas Water Code, and Texas Commission on Environmental Quality rules and orders promulgated under those statutes). D&S Marine is a member of the class whom these laws are intended to protect. Those violations of state law have resulted in a breach of duty to D&S Marine and proximately caused D&S Marine's damages.

31. As a direct and proximate cause of ITC's negligence per se, D&S Marine suffered damages, and D&S Marine seeks recovery from ITC's of all of its actual, special, consequential, incidental, and other damages, harms and losses.

## PRIVATE NUISANCE

32. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

33. ITC created a nuisance. D&S Marine has a private interest in its Vessels, and the ITC fire substantially interfered with D&S Marine's interest in the use and enjoyment of its Vessels and caused D&S Marine unreasonable discomfort or annoyance. D&S Marine seeks the recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses resulting from the nuisance created by ITC's negligence and/or abnormally dangerous conduct. D&S Marine further seeks recovery of exemplary damages and attorney's fees.

## TRESPASS

34. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

35. ITC trespassed against D&S Marine when it physically, intentionally, and voluntarily interfered with D&S Marine's right of possession of D&S Marine's Vessels without authorization. D&S Marine had a lawful right to possess its Vessels. Upon information and belief, ITC's acts or omissions caused air contaminants to intrude onto D&S Marine's Vessels and its property, which caused injury to D&S Marine's right of possession.

36. D&S Marine suffered actual damages. Accordingly, D&S Marine seeks recovery of all of its actual, special, consequential, incidental, and other damages, harms and losses,

including cost of restoration or repair, loss of use, and lost profits, caused by ITC's trespass. D&S Marine also seeks recovery of exemplary damages.

## INDEMNITY

37. D&S Marine incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

38. D&S Marine had a nondelegable duty to provide a seaworthy vessel to its crews at all times. The presence of "toxic gases" potentially created an unseaworthy condition, thus requiring the crews' evacuation.

39. Further, D&S Marine had a nondelegable duty to provide its crews with food, lodging, and wages following their exposure, commonly known as Maintenance and Cure.

40. Finally, D&S Marine had a nondelegable duty to pay its crews all amounts they would have been entitled to through the end of their hitch, i.e., unearned wages.

41. Through no fault of its own or those for whom it may be deemed responsible, D&S Marine was damaged by the ITC fire.

42. As a direct result of the fault and breach of duties owed by ITC, D&S Marine is entitled to recoup and recover all costs and expenses it has incurred from ITC through indemnity.

## DAMAGES

43. ITC has caused D&S Marine to suffer approximately $32,389.96 in economic and physical damages, including but not limited to:

xiv. Medical treatment and/or testing of crew members;
xv. Property damages to its Vessels;
xvi. Attorney's fees in defense of claims by crew members;
xvii. Food and Lodging for its crew members; and
xviii. Replacement of contaminated items.

## PRESERVATION OF EVIDENCE

44. D&S Marine hereby requests and demands that ITC preserve and maintain all evidence pertaining to any claim or defense related to the incidents made the basis of this lawsuit or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance or security tapes or information, business or medical records, incident reports, tenant files, periodic reports, financial statements, bills, telephone call slips or records, estimates, invoices, checks, measurements, correspondence, facsimiles, email, voicemail, text messages, any evidence involving the incident in question, and any electronic image or information related to the referenced incident or damages. Failure to maintain such items will constitute "spoliation" of the evidence.

## REQUEST FOR DISCLOSURE

45. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, ITC is requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

## PRAYER FOR RELIEF

46. D&S Marine requests that ITC be served with process, that they be required to appear and answer in this lawsuit, and that after trial or other final hearing on the merits, the Court enter a judgment awarding D&S Marine:

    i. Its actual, special, consequential, incidental, and other damages, harms, and losses, including but not limited to loss of market value of its Vessels, cost of repair, loss of use of its Vessels, out of pocket damages, lost profits, and loss of business goodwill;
    ii. Pre-judgment and post-judgment interest at the highest rate allowed by law;
    iii. Exemplary damages in an amount determined sufficient under the applicable guiding legal principles;
    iv. Costs of court; and

v.  Any and all further relief, either at law or in equity, general or special, to which D&S Marine may show itself entitled.

>Respectfully submitted,
>
>LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD, A LAW CORPORATION
>
>*/s/ Todd G. Crawford*
>Todd G. Crawford
>SBN:   05041050
>tcrawford@lawla.com
>801 Travis Street, Suite 1800
>Houston, Texas 77002
>PH:    (713) 222-1990
>FAX:   (713) 222-1996
>
>ATTORNEYS FOR PLAINTIFF